Christopher Paul BORDEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. C-83-170.

Court of Criminal Appeals of Oklahoma.

Nov. 25, 1985.

E. Alvin Schay, Appellate Public Defender, Norman, for petitioner.

No response required by respondent.

**OPINION**

BRETT, Judge:

Appellant, Christopher Paul Borden, pled guilty in Payne County to Robbery with Firearm, Case No. CRF–81–371; Shooting with Intent to Kill, Case No. CRF–81–373; and Shooting with Intent to Kill, Case No. CRF–82–109. All three offenses arose from the same occurrence. He was sentenced to forty (40) years' imprisonment, life imprisonment, and forty (40) years' imprisonment, respectively. The sentences in Cases No. CRF–81–371 and CRF–81–373 are to run consecutively and the sentence in Case No. CRF–82–109 is to run concurrent with Case No. CRF–81–371.

Appellant was represented by court-appointed counsel at every stage of the proceeding. His application to withdraw his guilty plea was timely filed. The trial court denied his application and he has filed a petition for writ of certiorari for review by this Court. The judgments and sentences in all three cases are affirmed.

Late in the afternoon on November 17, 1981, appellant and two friends, a man and woman, devised a plan to rob a Cushing pharmacy. The plan was for appellant's two friends to park nearby while he went in alone. He had on a ski mask and was carrying a hand gun. Appellant told the pharmacist, Ken Hibbard, to give him narcotics. Hibbard in a gesture of supplication raised his hands and agreed to give him all he had. For no apparent reason appellant shot Hibbard in the chest from a distance of less than ten feet. Appellant then fired a couple of shots at the rear of the store where two carpenters had been working. Hibbard, although critically wounded, managed to put the kind of drugs appellant wanted in a box and appellant fled with his friends in the truck. There was evidence Hibbard's wound would have been fatal except for the immediate medical attention he received from the hospital across the street.

Appellant pled guilty to the robbery with firearms (CRF–81–371) and shooting with intent to kill (CRF–81–373) which were the cases directly connected to the events regarding Mr. Hibbard. The third charge (CRF–82–109) dealt with the shots appellant fired at the carpenters. He pled guilty to that charge shortly before the judgment and sentence was entered in the other two cases. Appellant's guilty plea was not the result of a bargain with the prosecutor.

Appellant does not claim his plea was entered involuntarily. *See King v. State,* 553 P.2d 529 (Okl.Cr.1976). He objects, however, to the manner in which the trial judge handled the sentencing. He con-

tends had he known what the judge had in mind he would not have pled guilty. *See Elmore v. State,* 624 P.2d 78 (Okl.Cr.1981). The guilty pleas in the Hibbard cases were entered on the day before the jury trial was to begin. At that hearing, the judge announced he was going to call an advisory jury to hear evidence of mitigation, of aggravation and to have the jury recommend sentences on the charges. This announcement was made before appellant unequivocally pled guilty.

The judge made it very clear to appellant what his plan was. Appellant stated in the record, "What he's [the Judge] saying is the sentencing will be sometime in the future and he will listen to all of our stories at approximately the same time.... I'm glad you did it that way." After it was all over and at appellant's hearing to withdraw his guilty pleas he said, "And I thought when I was pleading guilty that you were going to sentence me that day to what I pled guilty to, nothing else. A life and two 40-year sentences wasn't anything at all like I figured with counsel and with the D.A. and everybody and what had been said that it was anything going to be like that. And that's not really the main issue. I didn't know anything about the advisory jury. I didn't understand it and I still don't."

■ Although advisory juries are unauthorized in Oklahoma, the empaneling of a jury under these circumstances does not mean the sentences set by the judge are reversible error. The lack of authority by the judge to incur this expense is a separate issue from the matter before this Court. Appellant has cited no authority that makes this procedure reversible per se. Appellant argues that since the judge set the sentences exactly the same as those recommended by the jury that is proof he was influenced by the jury. This argument is without merit. We find the presence of the jury was superfluous, therefore, we will examine the procedure followed by the Court as if no jury had been present and evaluate the sentences accordingly.

■ Appellant's second proposition of error claims the "court committed reversible error in admitting irrelevant and prejudicial testimony" at the hearing. The court heard testimony from the victim, the victim's wife, and his mother-in-law regarding the pain, suffering and mental anguish the victim and his family suffered because of the shooting. An employee of the pardon and parole board testified to the parole system explaining such things as good time credits, how consecutive and concurrent sentencing work and the parole procedure in regard to life versus term of years sentences. The presentence report was read by a probation officer. Appellant is correct that most, if not all, of this evidence would have been inadmissible if this had been a regular jury sentencing. In this case, however, substantially all of this information would have already been known to the judge from other legitimate sources.

In prior case law we have acknowledged the fact that the introduction of inadmissible, prejudicial and irrelevant evidence, is treated differently when a jury is not involved. There is a presumption that the trial court's consider only competent and admissible evidence in reaching decisions. *See Fox v. State,* 556 P.2d 1281 (Okl.Cr. 1976); *Moser v. State,* 509 P.2d 184 (Okl. Cr.1973). This is a pragmatic approach that is fully justified; it would be unrealistic to pretend trial judges do not already know about work credits and pardon and parole procedures. This Court has held even when this information is erroneously included at a jury trial it is not necessarily fatal, particularly in a two stage trial. *See Merriman v. State,* 499 P.2d 477 (Okl.Cr. 1972).

■ The statutes regarding the sentencing phase of a trial are found at 22 O.S. 1981, §§ 973, 974, 975 and 982. Presentence investigations, found in § 982, have been authorized by statute since 1967. The content of those reports contain information that would not be permitted to go to a jury. They are intended to be an aid to the judge at arriving at a proper sentence. Appellant claims that only the prosecutor or a

defendant can institute a hearing under the procedure in 22 O.S.1981, § 973. He also contends that a waiver of a presentence investigation under § 982 by the prosecutor and defendant is binding upon the Court. We do not find support for this interpretation. The Court is able to utilize these procedures even if both parties have waived them.

In this case all parties had advance notice of the hearing and had an opportunity to bring in evidence of aggravation or mitigation for the court's consideration. We find the court complied with 22 O.S.1981, §§ 973, 974, and 975 both in letter and intent.

Appellant also claims his sentences were excessive under the circumstances. Appellant has failed to show the sentences were not commensurate with the gravity of the crimes committed. This Court will not modify a sentence imposed by the trial court "unless we can conscientiously say that under all the facts and circumstances the sentence was so excessive as to shock the conscience of the Court." *See Edwards v. State*, 663 P.2d 1233 (Okl.Cr. 1983).

The judgments and sentences in all three cases are hereby AFFIRMED.

BUSSEY, J., concurs.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

The advisory jury employed herein is neither authorized by our state constitution or by statute. Instead, our cases indicate that it is the duty of the trial court to impose sentence after a plea. *Ex Parte Mougell*, 96 Okl.Cr. 354, 255 P.2d 297 (1954). *Accord Pettigrew v. Page*, 444 P.2d 241 (Okl. Cr.1968). In fact, we have held the State has no right to have a jury summoned to consider punishment after a plea of guilty. *Headrick v. Couch*, 539 P.2d 748 (Okl.Cr. 1975). It is certainly not an inherent power possessed by the trial court to call such a jury. It is clear the appellant was prejudiced by this unauthorized procedure, as

the trial judge followed the jury's "recommendation." Accordingly, I dissent.